**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**EDWARD D. WARD**                                                                                      **PLAINTIFF**

**versus**                                                        **CIVIL ACTION NO. 5:08cv00241-DCB-MTP**

**CHRISTOPHER EPPS, JACQUELINE BANKS,
SANDRA JACKSON, T. McNABB**                                          **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on the Defendants' motion for summary judgment [42], seeking judgment in their favor on claims raised against them by the *pro se* Plaintiff's civil rights complaint. Having reviewed Defendants' motion [42], the Plaintiff's response [45], Defendants' rebuttal [47], along with the applicable law, the undersigned recommends that the motion be granted and that Plaintiff's claims be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff Edward Ward, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on July 14, 2008. Plaintiff is currently incarcerated at the Wilkinson County Correctional Facility ("WCCF")[1] after having been convicted of burglary, rape, and sexual battery. Due to the nature of Plaintiff's crimes, he is considered a protective custody inmate. Through his Complaint and during his *Spears*[2] hearing, Plaintiff claims Defendants violated the Eighth Amendment by denial of medical treatment, failure to protect, and issuance of an improper rule violation report ("RVR"). *See* Complaint [1]. Plaintiff named

---

[1] All incidents alleged in this case took place at WCCF, however, when Plaintiff filed his Complaint he was incarcerated at the Mississippi State Penitentiary located in Parchman, Mississippi. Plaintiff, however, is now back at WCCF. *See* [44].

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on March 9, 2009.

1

Christopher Epps, Jacquelyn Banks, Sandra Jackson, and T. McNabb as Defendants in his complaint. *See* [1] at 2. Christopher Epps is the Commissioner and Director of the Mississippi Department of Corrections ("MDOC") and each correctional institution is under his jurisdiction–including WCCF.[3] Defendant Banks is the Warden at WCCF and held that position at the time of the alleged incident. Defendant Jackson was employed as a unit manager at WCCF and Defendant McNabb as a correctional officer at WCCF during the time of the alleged incident.

In his complaint, Plaintiff alleges that on January 15, 2008 and on February 20, 2008, he notified Defendants Banks and Jackson of problems he was having with various other inmates. However, Plaintiff avers that Defendants Banks and Jackson took no action after he notified them of the threats he was receiving from alleged gang members. The threats, Plaintiff argues, "posed a threat to [P]laintiffs [sic] safety with [i]mminent danger." *See* [1] at 3. Plaintiff suffered an assault two days after his first complaint to Defendants, on January 17, 2008. During this assault, Plaintiff was "slapped" by several inmates. Plaintiff states that Defendant Jackson responded to the altercation by saying "oh [t]hey don't mean no harm." *See* [1] at 4.

On February 26, 2008, Plaintiff was assaulted again when he attempted to exit "his cell to get his tray off the cart." *Id.* Plaintiff was then approached by two of the same inmates involved in the January 17th assault and questioned as to whether Plaintiff stole a food tray off the cart. Plaintiff stated that he responded in the negative, but informed "the inmates that their [q]uestion was offensive and resented." *See* [1] at 5. Plaintiff alleges that while Officer McNabb was supposed to be regulating the food trays and at her post, no officers were in sight. Plaintiff was

---

[3] Defendant Epps was dismissed from this action with prejudice on May 15, 2009 when the court granted his *ore tenus* motion to dismiss. *See* [29] & [41].

hit with a "lock in a sock" and hit with a closed fist when he attempted to exit his cell. *See* [1] at 6. Plaintiff attempted to seek assistance from Defendant McNabb by exclaiming that he was being attacked and pleaded for McNabb to open the door. However, as Plaintiff alleges, McNabb stood "at the zone door looking" and failed to act on Plaintiff's request for help. *See* [1] at 7. Plaintiff then grabbed a mop handle in order to protect himself from further injury. However, an inmate grabbed "a tray off the food cart and hit plaintiff in the back of the head: blood splattered everywhere." *Id.* At that point, Plaintiff avers that McNabb instructed the tower officer to open the zone door.

Approximately twenty (20) minutes after the incident, Plaintiff was taken to see medical personnel within the facility and then one (1) hour later was sent to an outside hospital. *See* [1] at 4, 7, & 18. Plaintiff was treated by Dr. Field at Field Memorial Community Hospital for a scalp laceration and his jaw was x-rayed. *See* [42-6] at 1 & 3. The x-ray revealed no jaw fracture and Plaintiff was released the same day. *Id.*

An initial investigation was conducted and Plaintiff was issued an RVR by McNabb. *See* [1] at 8 & [42-5] at 3. The circumstances and details surrounding the issuance of the RVR were that Plaintiff was observed by McNabb "striking at several offenders with a mop and a small object in his hand attempting to assault several inmates . . . ." *See* [42-5] at 3.

After the RVR was issued, Plaintiff was afforded a hearing on March 10, 2008. *See* [42-7] at ¶ 5. Plaintiff testified at the hearing, along with McNabb, four (4) other witnesses, and two (2) other correctional officers. *Id.* at ¶ 6. "Based on the evidence presented [at the hearing], it was found that Mr. Ward had a 'shank' made of a sharpened eyeglass handle in one hand and a mop handle in the other hand, and was using these weapons in a fight with other inmates. It was further found that Mr. Ward played a significant role in instigating the altercation." *See* [42-7] at

¶ 6. Following the hearing, Plaintiff signed the RVR. *Id.* at ¶ 8. Plaintiff was given twenty (20) days[4] of segregation and reclassified as a result of being found to have instigated and/or initiated the incident. *Id.* at ¶ 7. Plaintiff claims none of the other inmates involved in the incident served any time in segregation. *See* [1] at 8 & 21.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw

---

[4] Plaintiff alleges he "served [a]pproximately forty-five (45) days [i]n segregation." *See* [1] at 8. However, Thelma Lindsey, disciplinary officer at WCCF, states in her affidavit that Plaintiff served twenty (20) days in isolation/segregation. *See* [42-7]. Further, a copy of the RVR also shows twenty (20) days. *See* [42-7] at 3.

4

inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* (*quoting U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) ("Under § 1983, supervisory officials are not held liable for the actions of subordinates on any theory of vicarious liability.") (citations omitted). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (*citing Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983

5

violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (rejecting argument that a supervisor's knowledge of his or her subordinate's discriminatory purpose would amount to the supervisor violating the Constitution, thereby further limiting the scope of liability).

**Denial of Adequate Medical Treatment**

Plaintiff claims that Defendants Banks and Jackson failed to provide him with sufficient medical treatment after the incident. During Plaintiff's *Spears* hearing, he complained about consistent pain in his jaw and stated that he wished for prison officials to take him to an outside doctor for his jaw to be inspected. (*Spears Trans.* 20:6–20:13, Mar. 9, 2009); *See* [42-9]. Plaintiff stated that he has complained numerous times to Defendants Banks and Jackson about the pain, but no action was taken. (*Id.* at 20:21–20:25.) In sum, Plaintiff seeks to be examined by an outside doctor. (*Id.* at 20:7–20:10.) The court, however, has already denied this request. *See* Order [40].

A violation of the constitution's proscription against cruel and unusual punishment occurs when prison officials are "deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647-48 (5th Cir. 1996). "Deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Grissom v. Patterson*, 14 F.3d 52, Nos. 91-7137, 92-7244, 1993 WL 560256, at * 4 (5th Cir. 1993) (*citing Hudson v. McMillian*, 112 S.Ct. 995, 1000 (1992)). To

6

meet the standard of deliberate indifference, a plaintiff is required to "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson*, 91 Fed. Appx. at 965 (*quoting Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)); *see also Hare*, 74 F.3d at 648-50. Furthermore, a prisoner's mere disagreement with the treatment he received will not stand as a basis for Section 1983 liability, absent extraordinary circumstances. *Davidson*, 91 Fed. Appx. at 965 (*citing Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).

The facts are undisputed that Plaintiff was promptly taken to medical within the prison and then promptly sent to an outside hospital for further treatment and care. Delores Spinks, a registered nurse practitioner at WCCF, stated in her affidavit that Plaintiff was taken to Field Memorial Community Hospital and was treated by Dr. Field. *See* [42-6]. Plaintiff was diagnosed as having a left jaw contusion and scalp laceration. *Id.* Furthermore, Plaintiff's jaw was x-rayed and there was no evidence of fracture. *Id.* Ms. Spinks reviewed all of Plaintiff's medical records, including the hospital records, and found no evidence or indication that Plaintiff was ever denied medical treatment or given insufficient medical treatment. *Id.* Plaintiff had submitted two (2) sick call requests complaining of jaw pain between the time the incident occurred and the time Plaintiff filed his complaint. *Id.* Both times he was provided treatment and given medication for the pain. *Id.* Plaintiff's disagreement with the treatment he was provided does not amount to a constitutional violation. *See Davidson*, 91 Fed. Appx. at 965.

Plaintiff has failed to meet the high standard of deliberate indifference. No evidence has been provided to show that Plaintiff's complaints were ignored or that Plaintiff was refused treatment. Plaintiff stated in his complaint that approximately an hour and twenty minutes after

the alteration, Plaintiff was either on his way to the hospital or at the hospital. *See* [1] at 4 & 7-8. Moreover, Plaintiff was sent to medical within WCCF approximately twenty (20) minutes after the altercation. *Id.* at 4 & 7. This short time lag for Plaintiff's head laceration and jaw injury does not meet the standard of deliberate indifference or wanton disregard for medical needs. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1995) ("[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."). Furthermore, during the four (4) months between the date of the incident and the date the complaint was filed, Plaintiff requested medical treatment twice and received said treatment along with pain medication. No evidence has been presented that either Defendant Banks or Jackson acted toward Plaintiff with deliberate indifference. Accordingly, Defendants Banks and Jackson are entitled to judgment as a matter of law on this claim.

**Failure to Protect**

Plaintiff claims that Defendants Banks, Jackson, and McNabb all knew that inmates housed with Plaintiff were threatening him but took no action in response. *See* [1] at 3-4. In January and February of 2008, Plaintiff alleges he was threatened by various gang member inmates. In response to these threats, Plaintiff claims he enlisted the help of Defendants, asking them to protect him from the other inmates but that Defendants failed to take action.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence conducted by other prisoners. *Hill v. Thomas*, No. 08-50529, 2009 WL 1181504, at * 1 (5th Cir. May 1, 2009) (*citing Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995)). However, not every injury "by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* (*citing Farmer*, 511 U.S. at 834; *Horton*, 70 F.3d at 401). To prevail on a failure to

8

protect claim, a plaintiff must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (*citing Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). Deliberate indifference consists of the official being aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (*quoting Farmer*, 511 U.S. at 837). Furthermore, the Fifth Circuit has held that a negligent failure to protect an inmate is not tantamount to a constitutional violation. *Dilworth v. Box*, 53 F.3d 1281, No. 94-41088, 1995 WL 295885, at *3 (5th Cir. Apr. 20, 1995).

Plaintiff states that he notified Defendants Banks and Jackson of threats made against him. However, Defendants deny this allegation, as discussed below. The proper way to handle such matters is by means of the MDOC "red-tag" procedure. *See* [42-2] at ¶ 7. By filling out a readily accessible form, an inmate can "red-tag" another inmate. This process is mainly used when one inmate is threatened by another. *Id.* After the form is reviewed, the inmates will be housed separately and are forbidden to come into contact with each other. *Id.* Plaintiff, however, did not follow this procedure.

It is undisputed that Plaintiff was aware of the procedure and how to submit a "red-tag."[5] In August of 2006, Plaintiff submitted a "red-tag" on an inmate alleging extortion and threats.[6] *See* [42-2] at 5. Plaintiff was granted relief through the procedure and the red-tagged inmate was no longer housed with Plaintiff.

---

[5] Plaintiff was informed of how to use the procedure when he first arrived at WCCF. *See* [42-2] at ¶ 7 & pg. 4.

[6] At the time of the incident, this inmate was not housed with the Plaintiff and did not take part in any of the threats or assaults at issue here.

9

Moreover, Edith Dennis, a Case Manager at WCCF, stated in her affidavit that she visited Plaintiff's pod approximately three (3) times a week during the months of January and February 2008 and Plaintiff never complained of any threats or safety issues. *Id.* at ¶ 3. Although Plaintiff had the opportunity to discuss these matters with Dennis–whose responsibilities include assisting inmates with the red-tag procedure and handling concerns inmates may have for their safety–Plaintiff failed to do so. *Id.* at ¶ 7. Plaintiff also had the opportunity to discuss these matters with Defendant Jackson when they met to discuss Plaintiff's status as a protective custody inmate on January 31, 2008. *See* [42-3] at ¶ 5. During their meeting, Plaintiff was asked if he wished to remain in protective custody, to which Plaintiff responded in the affirmative. *Id.* Thus, Plaintiff requested to be kept in the same pod as he was before, the pod where the threats were allegedly made, and stated he had no issues with his housing. *Id.*

Plaintiff attached three (3) copies of handwritten letters to his complaint that he claims he sent to Defendants Banks and Jackson complaining of threats and requesting assistance. *See* [1] at 12-14. Once again, however, Plaintiff did not follow the correct procedure. Even if letters were sent to Defendants Banks and Jackson alleging threats or other safety issues, the letters would have promptly been forwarded to that inmate's case manager for proper handling and investigation. *See* [42-3] at ¶ 3. Defendant Jackson stated she had no knowledge of the threats made to Plaintiff before the incident and is unable to locate copies of either letter Plaintiff sent her. *Id.* at ¶ 4. Sharonda Jackson, who was employed as administrative assistant to Defendant Banks, described the process she adhered to each time a letter was received by an inmate–stating she had a strict policy of keeping copies of all letters and filing them according to the date they were received. *See* [42-4] at ¶¶ 2 & 3. However, no letters from Plaintiff were found in the

10

February or January 2008 files. *Id.*

There is a total lack of evidence that Defendants Banks and Jackson received any letters from Plaintiff. In *Dilworth v. Box*, 53 F.3d 1281, No. 94-41088, 1995 WL 295885 at * 1 (5th Cir. Apr. 20, 1995), the Fifth Circuit granted defendants' summary judgment even though the plaintiff alleged he sent a letter to the Sheriff notifying him that several guards were harassing him. The letters, the Fifth Circuit explained, failed to establish a genuine issue of material fact regarding whether the Sheriff was deliberately indifferent to the plaintiff's alleged risks. Furthermore, the court held that the letter might be enough for summary judgment in a negligence case, but did not meet the high standard of deliberate indifference. *See also Grissom*, 14 F.3d, at * 3 (5th Cir. 1993). Similar to the case at hand, Plaintiff Ward's claim that he sent letters to the Defendants notifying them of harassment does not create a genuine issue of material fact.

Similarly, in *Grissom v. Patterson*, an incarcerated plaintiff alleged that he had written several letters to the Sheriff informing him of numerous threats that had been made by another inmate. *Id.* at 3. However, plaintiff's letters never specified the nature of the threats and did not provide any other evidence or details that he was in danger of physical harm. *Id.* Thus, the Fifth Circuit held that there was insufficient evidence as a matter of law to support a finding that the Sheriff was deliberately indifferent. *Id.* As in *Grissom*, many of Plaintiff Ward's letters tend to show only innocuous and unspecified threats. *See* [1] at 12–13 ("McCloud came into my cell and turned over the chemicals in which I keep to clean showers."; "McCloud scratched me in the face."). Interestingly, the letters are "handwritten cop[ies] for self" and not actual copies of the original letters that were allegedly sent. *See* [1] at 12–15.

Additionally, Plaintiff alleges a failure to protect claim against Officer McNabb.

11

However, Plaintiff does not allege that McNabb had notice of Plaintiff's prior threats. Without any notice, McNabb was, therefore, unaware of any threats or safety issues concerning Plaintiff. Further, Plaintiff was already in protective custody prior to and at the time of the alleged incident. Thus, the Defendants were not deliberately indifferent to Plaintiff's risk. According to McNabb's affidavit, all proper protocol to maintain safety was observed during the incident. *See* [42-5]. The tower officer had control of the doors, not McNabb, and determined that the doors should not be opened for security reasons. *Id.* at ¶¶ 3 & 5. McNabb stated that she had no knowledge that Plaintiff had ever been threatened when she left Plaintiff's pod to attend to another pod. *Id.* at ¶¶ 4 & 8.

The evidence and testimony submitted by Plaintiff fails to establish a failure to protect claim against any of the Defendants. Accordingly, Defendants Banks, Jackson, and McNabb are entitled to judgment as a matter of law on this claim.

**Wrongful RVR**

Plaintiff argues that he was wrongfully issued an RVR for the altercation which took place on February 26, 2008. *See* [1] at 8. On March 10, 2008, Plaintiff was afforded a hearing. *See* [42-7] at ¶ 5. Based upon the evidence and testimony presented, Plaintiff was found guilty of the charge in the RVR. *Id.* at ¶ 6. As a result, Plaintiff was issued twenty (20) days of segregation and reclassified. *Id.* Plaintiff takes issue with the fact that he "was the only person to serve segregation time" and that he "was not the [i]nitiator of the assault on his person." *See* [1] at 8.

This court does not "'second-guess' the findings and determinations of prison disciplinary committees[,]" nor does the "Constitution . . . demand 'error-free' decision making . . . ." *Hoye v. Nelson*, No. 4:07cv044-M-B, 2007 WL 1321964, at *1 (N.D. Miss. May 3, 2007)

(*quoting Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984)) (dismissing plaintiff's claim regarding a "false RVR" *sua sponte,* reasoning that plaintiff's allegation did not constitute a constitutional violation); *McGowan v. Peel*, No. 3:06cv659-DPJ-JCS, 2007 WL 710154, at *1-*2 (S.D. Miss. Mar. 6, 2007) (internal citations and quotations omitted) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915, where plaintiff claimed that he was innocent of the charges in the RVR, his disciplinary hearing was delayed, that the report reflected the incorrect date and time that he received a copy of the report; the court stated that a "prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met.").

"A plaintiff must be deprived of some right secured to him by the Constitution or the laws of the United States. . . . In the event there is no constitutional right, the plaintiff's complaint fails." *Hoye*, 2007 WL 1321964 at *1 (citations omitted); *see also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (holding that cell restrictions and loss of commissary privileges are "merely changes in the conditions of [ ] confinement and do not implicate due process concerns"); *Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding that denial of showers, legal materials, recreation and other privileges for three days did not amount to cruel and unusual punishment in violation of the Eighth Amendment). Furthermore, in 1995 the United States Supreme Court held that punishing a prisoner by segregated confinement as a result of misconduct "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *see also Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003) (prisoner's placement in extended lockdown did not constitute an infringement of a liberty interest that would invoke the due process clause).

However, even if the due process clause were invoked, Plaintiff was afforded due process. The staff at WCCF followed procedure and conducted an investigation, Plaintiff had notice that an RVR was being issued against him, and a disciplinary hearing was held less than ten (10) days after the RVR was issued. *See* [42-7]. As previously stated, witnesses were allowed to testify at the hearing–as did Plaintiff, along with McNabb, four (4) witnesses and two (2) other correctional officers–and testimony was presented against Plaintiff alleging that he had "a 'shank' made of a sharpened eyeglass handle in one hand and a mop handle in the other hand, and was using these weapons in a fight with other inmates. It was further found that Mr. Ward played a significant role in instigating the altercation." *Id.* at ¶ 6.

Thus, whether or not it is necessary to invoke the procedural protections of the due process clause, Plaintiff is unable to provide sufficient evidence to support this claim. Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

## RECOMMENDATION

For the forgoing reasons, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment [42] be granted and this matter be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten (10) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed

findings, conclusions, and recommendations contained within this report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 22nd day of July, 2009.

s/ Michael T. Parker<br>
United States Magistrate Judge